OPINION AND ORDER REGARDING JURISDICTION
MICHAEL PETOSKEY, Chief Justice.
I. INTRODUCTION:
This threshold issue arises out of a present appeal of the conviction of Appellant-Defendant (hereinafter Defendant) on Sexual Assault. Defendant argues that the Little River Band of Ottawa Indians does not have criminal jurisdiction over this matter because the crime occurred on tribal fee land outside the “reservation”. On the other hand, the People of the Tribe argued that the Tribe has the sovereign power to hold Tribal members and other Indians accountable for unacceptable behavior during a Tribal event at their Community Center. This Court remanded this question back to the Tribal Court for “findings of fact” and “conclusions of law” because the issue had not been previously addressed by the Tribal Court. The Tribal Court issued its mitten decision on August 21, 2008. The Tribal Court ruled in favor of the People of the Tribe based upon the express language of the Tribal Constitution. Both parties to the present appeal have extensively briefed this issue for the Court and should be commended for their volume of work.
II. ISSUE:
Does the Little River Band of Ottawa Indians Tribal Court have criminal jurisdiction in a case when the criminal act occurred in the Tribal Community Center located on land owned by the Tribe, but not within the “reservation” boundaries and not on land held by the U.S. government as “trust” land, during a tribal event and when the Defendant is both a tribal member and a tribal official?
*285 III. DISCUSSION AND ANALYSIS:
Whether the courts of the Tribe have jurisdiction, i.e. authority, over matters is a threshold determination, which must be made by the courts in each and every case. See Champagne v. The People of the Little River Band of Ottawa Indians, Case No. 06-178-AP. (This Court’s Note: The case caption should actually be: The People of the Little River Band of Ottawa Indians v. Champagne.) The beginning point for any analysis of tribal jurisdiction begins with the inherent authority of tribes to mange their internal affairs and domestic relations. See Taiton v. Mages, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896). In fact, federal Indian law recognition of such inherent authority is well established and long-standing in the law. The next step is to look for any limitations that may have been placed upon that inherent authority.
Defendant argues that the Tribal Community Center is not located within “Indian country” as that term is defined by 18 USC 1151. Defendant characterizes the present issue as “a very simple, textbook criminal jurisdiction issue”. The vehemence of his argument is exceeded only by its misdirection. Defendant has submitted numerous federal cases which define the parameters of “Indian country” for the purposes of determining whether federal courts have federal criminal jurisdiction of crimes committed on such lands. That analysis has nothing to do with whether tribal courts have tribal criminal jurisdiction. After diligent research of authorities, this Court cannot find any federal limitation over the exercise of tribal criminal authority over crimes committed by Indians on land which is owned in fee by the Tribe.
It is common knowledge that the Tribal Community Center has been the center of Tribal community activities ever since it was purchased by the Tribe many years ago. In fact, this very Court conducted several hearings in those facilities when the Tribal courts were first established and it is where the Tribal court offices were located for many years. Thus, it is imperative that judicial notice be taken of the tribal nature of all the activities that have occurred at the Community Center over many years now. In addition, the Center is a community gathering point to host varied and numerous tribal meetings, to serve community meals and to provide tribal office space for the conduct of the business of a tribal sovereign.
Criminal law simply put is the mere imposition of standards of behavior by defining that behavior which is unacceptable to the society, i.e. community, of people. It is clear to this Court that the Tribe’s standards of behavior ought to apply to the behavior of Tribal members and other Indians in the Tribal Community Center. The general welfare of the Tribe depends upon individuals deferring from behavior that offends community standards. The interests of the Tribe are very strong here. This case involves a tribal member in an elected position acting as an agent of the Tribe at a Tribal activity who committed a crime against a Tribal employee in a public setting openly visible to other employees and Tribal members who were present. It also involves a Tribal Court finding that Defendant exercised political influence affecting the victim and the Tribe’s welfare. It is sad that the present Defendant is a member of the Tribal Council, who in an effort to escape accountability, argues that the Tribe does not have the sovereign authority to hold him accountable to his violation of Tribal standards of behavior. The people should expect that Tribal officials will always work to protect and pro *286 mote tribal sovereignty, especially their elected representatives.
Nonetheless, the Court must consider whether the Tribe itself has imposed a limitation on the exercise of its inherent authority. Thus, we begin an examination of tribal law. Article I of the Tribal Constitution defines the “territory” of the Little River Band of Ottawa Indians as “... all lands which are now or hereinafter owned by or reserved for the Tribe ...” (bold added for emphasis by this Court). See The Constitution of the Little River Band of Ottawa Indians, Article I, Sec. 1. In fact, the provision includes a mandate that such lands “shall” be included in the definition. A constitutional mandate is a mandate of the people of the Band because the Tribal Constitution, as the organic governing document of the Tribe, is their collective consent to be governed and it provides their framework for government. The design is mandated.
Section 2 of that same Article requires that [tjhe jurisdiction over its members and territory shall be exercised to the fullest extent consistent with this Constitution, the sovereign powers of the Tribe, a,nd federal law.” (bold added again for emphasis by this Court). Defendant argues that this Section which distinguishes jurisdiction from territory means that tribal jurisdiction is not synonymous with its territory. We agree, but reach a different conclusion than Defendant would have us reach. Defendant’s conclusion is that tribal jurisdiction is smaller than its territory because the Tribe cannot exercise criminal jurisdiction over the land it owns in fee. Defendant makes this argument despite the express words used in the People’s definition of “territory” cited above. However, this Court recognizes that tribal jurisdiction is larger than territory because some tribal authority extends beyond its land, e.g. tribal membership and self-regulation of tribal treaty rights within treaty ceded areas. The drafters of the Tribal Constitution wisely recognized such.
Next, the Court examines the laws enacted by Tribal Council. There are two (2) ordinances enacted by Tribal Council that apply to the instant matter. The Law and Order—Criminal Offenses—Ordinance details the territorial jurisdiction of the Tribe to include:
(1) “all land within the limits of the Tribe’s reservation, including trust land, fee patented land and rights of way running through the reservation; and
(2) all lands outside the boundaries of the Tribe’s reservation held in trust by the United States for individual members of the Tribe or for the Tribe; and
(3) all other lands considered ‘Indian country’ as defined by 18 U.S.C. section 1151 that is associated with the Tribe. ” See Ordinance # 03-j00-03.
The second ordinance is the Criminal Procedures Ordinance and it provides that: “[T]he Tribal Court shall have jurisdiction over any action by any Indian as defined by this Ordinance, that is made a criminal offense under a/pplicable Tribal Code and that occurred within the territorial jurisdiction of the Tribe as defined in the Constitution” (bold added for emphasis by this Court). See Ordinance # 03-300-03, Section 8.08. Tribal Council is obligated by the Tribal Constitution, as this Court is, to assert jurisdiction over the Tribe’s territory.
It is clear to this Court that the first of these two (2) Ordinances is unconstitutionally narrow in that it does not provide for the exercise of the inherent criminal jurisdiction over all tribal lands. As mentioned above, the Tribal Constitution requires *287 that “ft]he jurisdiction over its members and territory shall be exercised to the fullest extent consistent with this Constitution, the sovereign powers of the Tribe, and, federal law.” See Tribal Constitution, Article I, Section 2, It is beyond dispute that Indian tribes have the inherent authority to mange their own affairs and domestic relations. There is no federal limitation over the exercise of tribal criminal authority over crimes committed by Indians on land which is owned in fee by the Tribe.
IV. ORDER:
WHEREFORE, FOR ALL OF THE FOREGOING, this Court DENIES Defendant’s Motion for Peremptory Reversal AND AFFIRMS the Tribal Court decision in its entirety because the Tribe has criminal jurisdiction in the present matter.
IT IS ORDERED THAT an Appellate Scheduling Conference be scheduled to set a briefing schedule to resolve all other issues pending in this appeal.